THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| K.B., | ) | |
| | ) | Supreme Court Nos. S-9822/9823 |
| Appellant, | ) | |
| | ) | Superior Court Nos. |
| v. | ) | 4FA-98-19/25 CP |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) | AND JUDGMENT* |
| DIVISION OF FAMILY & YOUTH | ) | |
| SERVICES, | ) | [No. 1034 – July 18, 2001] |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of
Alaska, Fourth Judicial District, Fairbanks,
Charles R. Pengilly, Judge.

Appearances: Kathleen A. Murphy, Assistant
Public Defender, and Barbara K. Brink, Public
Defender, Anchorage, for Appellant. D.
Rebecca Snow, Assistant Attorney General,
Fairbanks, and Bruce M. Botelho, Attorney
General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Matthews,
Eastaugh, Bryner, and Carpeneti, Justices.

1. K.B. appeals the termination of his parental rights
as to his five children with R.S. The trial court found that
K.B.'s chronic alcoholism and violence have placed his children at

---

\* Entered pursuant to Appellate Rule 214.

risk of harm and have impaired his ability to parent. The State, Department of Health and Social Services, Division of Family and Youth Services's (DFYS) permanency plan for the children keeps them in the physical custody of their mother. We conclude that the trial court did not abuse its discretion in determining that termination of K.B.'s parental rights was for the purposes of freeing the children for permanent placement and that the termination was in the children's best interests. We therefore affirm the termination of K.B.'s parental rights.

2. K.B. has five children with R.S. On February 4, 1998, DFYS took custody of the oldest four children[1] and filed a petition to adjudicate the Child in Need of Aid (CINA) status of the children and to terminate both parents' rights. DFYS had recorded five reports of physical abuse and neglect in the previous thirteen months. On the date that DFYS removed the children, an intoxicated K.B. had reportedly removed his three-month-old daughter from his sister's home, threatening that if anyone tried to take the baby from him, he would "kill them both."

---

[1] The youngest child of K.B. and R.S. had not yet been born -- she was born in August 1999. She was later added to the petition for termination of parental rights.

3. In April 1998, after R.S. had completed a six-week domestic violence program, the children were returned to her care, although they remained in custody of DFYS. DFYS required R.S. to remain sober and keep K.B. away from the children.

4. Both K.B. and R.S. stipulated to adjudication and disposition of the children's CINA status. Effective April 23, 1999, the oldest four children were adjudged to be in need of aid and were committed to the legal custody of DFYS, although they remained in the physical custody of R.S.[2]

5. On August 24, 1999, K.B. assaulted R.S. and their son. K.B. was then incarcerated from August 31, 1999 through December 22, 1999. In November 1999 DFYS filed a petition for the termination of K.B.'s parental rights.

6. In February 2000 R.S. obtained a protective order against K.B. On February 10, 2000, the five children were removed from their mother's home because she had recently begun abusing alcohol and she was therefore unable to keep K.B. away from the children. K.B. was incarcerated for violation of the protective order.

---

[2] The youngest child was adjudicated a child in need of aid for the first time at the termination hearing.

7. Superior Court Judge Charles R. Pengilly presided over the trial regarding the termination of K.B.'s parental rights on May 24 and 25, 2000. The Native Village of Northway intervened in this proceeding. The trial court found by clear and convincing evidence that the five children were in need of aid under AS 47.10.011(6), (8) and (10).[3] The trial court found by a

---

[3] AS 47.10.011 states in part:

Subject to AS 47.10.019, the court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that the child has been subjected to any of the following:

. . . .

(6) the child has suffered substantial physical harm, or there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent . . . or by the failure of the parent . . . to supervise the child adequately;

. . . .

(8) conduct by or conditions created by the parent . . . have

(A) resulted in mental injury to the child; or

(B) placed the child at substantial risk of mental injury . . . .

(continued...)

preponderance of the evidence that DFYS made substantial active efforts to reunify the family. It also found beyond a reasonable doubt that continued involvement by K.B. in their lives would likely result in serious emotional and physical damage to the children.

8. In a child in need of aid case, we will sustain the superior court's findings of fact unless they are clearly erroneous.[4] Whether the trial court's findings comport with the requirements of the CINA statutes is a question of law that this

---

[3](...continued)
. . . .

> (10) the parent['s] ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child; if a court has previously found that a child is a child in need of aid under this paragraph, the resumption of use of an intoxicant by a parent . . . within one year after rehabilitation is prima facie evidence that the ability to parent is substantially impaired and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child as described in this paragraph.

[4] See A.B. v. State, Dep't of Health & Social Servs., 7 P.3d 946, 950 (Alaska 2000).

court reviews de novo.[5] Whether the superior court erred in finding that the State complied with the Indian Child Welfare Act's (ICWA) requirement of active remedial efforts presents a question of law and fact.[6] This court will defer to the trial court's factual findings under the "clearly erroneous" standard, but will review de novo any questions of law.[7]

9. Alaska law establishes that the rights and responsibilities of a parent "may be terminated for purposes of freeing a child for adoption or other permanent placement."[8] To terminate a parent's rights, the court must find by clear and convincing evidence that the child is in need of aid under AS 47.10.011, and that the parent has not remedied the conduct or conditions that place the child at substantial risk of harm.[9] Additionally, ICWA requires DFYS to prove that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these

---

[5]    See id.

[6]    See A.M. v. State, 945 P.2d 296, 304 n.10 (Alaska 1997).

[7]    See A.A. v. State, Dep't of Family & Youth Servs., 982 P.2d 256, 259 (Alaska 1999).

[8]    AS 47.10.088.

[9]    See AS 47.10.088(a)(1).

efforts have proved unsuccessful."[10]  To determine whether to terminate parental rights, "the court shall consider the best interests of the child."[11]

10.  Although DFYS initially sought termination of both K.B.'s and R.S.'s parental rights, it ultimately elected only to pursue the termination of K.B.'s rights.  One parent's rights may be terminated without legally changing the relationship of the children to the other parent,[12] so long as the statutory requirements for termination are met and the trial court makes findings that the goal of termination of the parent's rights is to free the children for adoption or other permanent placement.[13]  We have recognized that "[p]lacement with a non-terminated parent could be an 'other permanent placement' under AS 47.10.088(a), and

---

[10]  25 U.S.C. § 1912(d) (2001).  Child in Need of Aid Rule 18(c)(1)(B) makes clear that, when a child is an "Indian child," the State must meet ICWA's "active efforts" requirement rather than AS 47.10.086's "reasonable efforts" requirement.

[11]  AS 47.10.088(c).

[12]  See AS 47.10.088(h) ("The court may order the termination of parental rights and responsibilities of one or both parents under AS 47.10.080(c)(3) and commit the child to the custody of the department.  The rights of one parent may be terminated without affecting the rights of the other parent.").

[13]  See A.B. v. State, Dep't of Health & Social Servs., 7 P.3d 946, 954 (Alaska 2000); A.H. v. State, Dep't of Health & Social Servs., 10 P.3d 1156, 1166 (Alaska 2000).

under AS 47.10.088(h), terminating the non-custodial parent's rights would not affect the rights of the custodial parent. But the termination must be made 'for purposes of freeing' a child for such permanent placement."[14]

11. Here, DFYS's goal was to free the children for placement with their mother. The permanency plan for the children, according to DFYS's October 7, 1999 report, was "for [the children] to remain with their mother and terminate on the father if he does not meet the requirements of his case plan." The trial court heard extensive evidence that K.B.'s involvement with the family would threaten permanent placement with R.S., in that R.S. had difficulty protecting her family from K.B., and K.B. repeatedly placed the children's physical and mental well-being at risk by his presence when under the influence of alcohol.

12. The superior court found that, "[t]here is clear and convincing evidence . . . that the children had suffered physical and emotional abuse by [K.B.] while in their parents' care, and that additional abuse and harm will occur if the present situation is allowed to continue." It recognized that, while no certainty exists that R.S.'s residence will be a safe and stable place for

---

[14]    A.B., 7 P.3d at 954 n.24.

the children's permanent placement even with K.B.'s parental rights terminated, "it certainly will be an improvement over the situation that's controlled up to this point." These findings demonstrate that the trial court terminated K.B.'s parental rights in order to free the children for permanent placement with their mother.

13. The trial court also found that termination of K.B.'s parental rights is in the best interests of the children. The court explained:

> These kids have lived in a violent, frightening, dangerous, erratic environment as long as they've been alive. It's more than time that they be offered a safe and stable place to grow up. . . . [R.S.]'s residence [with K.B.'s parental rights terminated] will be an improvement over the situation that's controlled up to this point.

The court found that the children's safety was clearly served by granting the termination petition. These findings demonstrate that the trial court considered the statutory best interest factors, emphasizing the harm caused to the children by K.B.'s conduct,[15] the history of K.B.'s conduct,[16] and the fact that

---

[15]    See AS 47.10.088(b)(3).

[16]    See AS 47.10.088(b)(5).

the harmful conduct was likely to continue.[17] The trial court did not err in weighing this evidence to determine that the children's best interests would be served by the termination of K.B.'s rights.[18]

14. ICWA applies to this case because the children are, for the purposes of that Act, Indian children.[19] The trial court found:

> A preponderance of the evidence demonstrates that the Department has made substantial active efforts many times in offering [K.B.] rehabilitative and family support services in an attempt to reunite the family. [K.B.] has not been receptive or cooperative in participating in his case plan or the services that have been offered to him.

It also found that K.B. "has been unable to control his drinking and resulting violence," the conduct that places his children at substantial risk of harm.

15. K.B. stipulated that DFYS had made active efforts through April 1999. The caseworker who worked with the family, Myron Hosier, developed a total of six case plans for K.B. in 1998

---

[17] See AS 47.10.088(b)(4).

[18] See D.M. v. State, Div. of Family & Youth Servs., 995 P.2d 205, 214 (Alaska 2000) ("We will not reweigh the evidence when the record provides clear support for the trial court's ruling.").

[19] 25 U.S.C. § 1903(4).

and 1999, including one on November 15, 1999. All case plans for K.B. indicated that he needed to complete a drug and alcohol assessment and evaluation and that he needed to follow whatever recommendations came from that evaluation. The plans also directed K.B.'s participation in services related to parenting, anger management, domestic violence, and individual counseling. Although it is unclear which, if any, services were available to K.B. in Northway, domestic violence and mental health services were identified and available in Tok. K.B. did not avail himself of these services. Moreover, in August 1999, just prior to K.B. entering jail, he contacted Hosier to express an interest in changing his life. Hosier provided K.B. with information about the services available to K.B. in jail, including substance abuse assessment and anger management and parenting classes. When in jail from August 1999 through December 1999 and then from February 2000 through April 2000, services were available to K.B.; however, he failed to verify that he had participated in any of these programs. Thus, the record provides support for the trial court's factual determination that "everything that reasonably could be done to get [K.B.] involved in these services was done, and every service that could reasonably have been made available to him was made available, and he simply resisted, and, for one reason or

another, was unable to comply." We therefore affirm the trial court's findings that the active efforts required under ICWA have been made.

16. The record shows that the trial court terminated K.B.'s parental rights for the purposes of enabling permanent placement of the children with their mother; neither relevant statutes nor case law precludes such a permanent plan. Additionally, the trial court made the required findings that the termination was in the best interests of the children and that active remedial efforts had been provided but were unsuccessful. The record does not suggest that these findings were clearly erroneous. We therefore AFFIRM the termination of K.B.'s parental rights.